UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  10-23869-CIV-ALTONAGA/Simonton

**BARNEXT OFFSHORE, LTD.**,

       Plaintiff,

vs.

**FERRETTI GROUP USA, INC.**, *et al.*,

       Defendants.

_____/

<u>**ORDER**</u>

**THIS CAUSE** came before the Court on Motions for Summary Judgment filed by Defendants, Pershing, SpA ("Pershing") [ECF No. 234]; Dometic Corporation ("Dometic") [ECF No. 235]; Condaria 87 Srl ("Condaria") [ECF No. 236]; and Ferretti Group USA, Inc. ("Ferretti") [ECF No. 237].   Each Motion was filed on January 17, 2012, together with a common Statement of Material Facts . . . ("Defendants' SMF") [ECF No. 233].   Plaintiff, Barnext Offshore, Ltd. ("Barnext"), filed Responses to each of the Motions (*see* [ECF Nos. 251–254]) on February 13, 2012, and a revised Statement of Material Facts . . . ("Plaintiff's SMF") [ECF No. 261] on February 24, 2012.   Defendants submitted a joint Response to Plaintiff's revised Statement of Material Facts ("Defendants' Response SMF") [ECF No. 268] and also submitted individual Reply memoranda on February 27, 2012.   (*See* [ECF Nos. 271–274]).   The Court has carefully considered the parties' written submissions, the record, and the applicable law.

**I. BACKGROUND**[1]

On April 14, 2010, a fire occurred on board a seventy-two-foot yacht named the *Barnext*

_____

[1]  Most of the disputed facts are addressed in the Analysis rather than in the Background section.

("Vessel" or "Yacht") when it was docked in Aventura, Florida.  (*See* Defs.' SMF ¶¶ 1, 7, 17; Pl.'s SMF ¶¶ 7, 17).[2]  The fire was allegedly caused by defects in an air conditioning system installed on the Vessel.  (*See* Defs.' SMF ¶ 17; Pl.'s SMF ¶ 17 (citing Second Am. Compl. ¶ 22 [ECF No. 188])).  The fire caused damage to the Vessel as well as to other personal property. (*See* Defs.' SMF ¶ 15).

Since 2008, the Vessel has been owned by Barnext, a British Virgin Islands corporate entity.  (*See* Defs.' SMF ¶¶ 1–2, 5).  Howard Barnett ("Mr. Barnett") is the sole principal and attorney-in-fact of Barnext.  (*See id.* ¶ 2).  In 2008, after negotiating for ten months, Mr. Barnett purchased the Vessel from MarineMax, a yacht dealership that had a showroom located in Pompano Beach, Florida.  (*See id.* ¶¶ 3, 5; Pl.'s SMF ¶¶ 57, 59).  Specifically, while in Florida, Mr. Barnett, in his role as Barnext's attorney-in-fact, signed a Purchase Agreement on July 28, 2008, and a Protocol for Delivery and Acceptance on September 29, 2008.  (*See* Defs.' SMF ¶ 5; Pl.'s SMF ¶ 59).  Later, on September 29, 2008, Mr. Barnett was in Bimini, Bahamas to close and take delivery and title of the Vessel on behalf of Barnext.  (*See* Defs.' SMF ¶ 5).  The closing occurred offshore as a tax-saving mechanism.  (*See* Pl.'s SMF ¶ 5).

Prior to Barnext's purchase of the Vessel, construction of the Vessel had been completed in September 2007 by Pershing, an Italian entity in the boat-building business.  (*See* Defs.' SMF ¶ 29).  A Condaria[3] air conditioning system, purchased by Pershing on May 24, 2007, was shipped to Pershing in June or July 2007, and later installed on the Vessel by Pershing.  (*See id.*

---

[2]  The parties include several facts within each numbered paragraph of their respective "statements of facts."  (*See generally* Defs.' SMF; Plf.'s SMF; Defs.' Resp. SMF).  To the extent that any party fails to direct the Court to the record evidence in support of its asserted facts (or its reasons for disputing an opposing party's asserted facts) contained in *each* sentence, the Court does not consider those assertions in deciding these motions.  *See* Fed. R. Civ. P. 56(e)(4).

[3]  The parties dispute whether the air conditioning unit was built by Condaria, Dometic, or both companies together.  *See infra* Part III.A.

¶¶ 18, 19, 30; Pl.'s SMF ¶ 19).  Pershing's United States distributor, Ferretti, is headquartered in Miami, Florida.  (*See* Defs.' SMF ¶ 31; Pl.'s SMF ¶¶ 57, 58).  At the time Barnext signed the Purchase Agreement, MarineMax was an exclusive dealer for Ferretti, meaning MarineMax was not permitted to sell any other brands of boats.[4]  (*See* Pl.'s SMF ¶ 57; Defs.' Resp. SMF ¶ 57).

Barnext brought this action on October 26, 2010 (s*ee* [ECF No. 1]), and filed an amended complaint on February 21, 2011 [ECF No. 39].  After the Court ruled on Defendants' motions to dismiss (*see* [ECF Nos. 109, 144]), Barnext filed a Second Amended Complaint [ECF No. 188] on September 6, 2011.  Discovery closed on December 8, 2011.  (*See* [ECF No. 158]).

## II.  LEGAL STANDARD

Summary judgment shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(a), (c). "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment."  *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case."  *Burgos v. Chertoff*, 274 F. App'x 839, 841 (11th Cir. 2008) (quoting *Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (internal quotation marks omitted)).  "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Channa Imps., Inc. v. Hybur, Ltd.*, No. 07-21516-CIV, 2008 WL 2914977, at *2 (S.D. Fla. Jul. 25, 2008) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

The movant's initial burden on a motion for summary judgment "consists of a

---

[4]  It appears that Ferretti's "brand" includes Pershing-built boats.

responsibility to inform the court of the basis for its motion and to identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (internal quotation marks and alterations in original omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

## III.  ANALYSIS

Barnext's Second Amended Complaint raises the following claims: negligence (Count I), products liability (Count II), and a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), FLA. STAT. §§ 501.201 *et seq.* (Count III), against Pershing; negligence (Count IV), products liability (Count V), breach of express warranty (Count VI), breach of implied warranty of merchantability (Count VII), breach of implied warranty of fitness for a particular purpose (Count VIII), claim under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.* (Count IX), and a FDUTPA claim (Count X), against Ferretti; and negligence (Count XIV), products liability (Count XV), breach of express warranty (Count XVI), and claims under the MMWA (Count XVII) and the FDUTPA (Count XVIII), against Condaria/Dometic.

Each Defendant seeks summary judgment as to all counts pending against it.  The arguments presented by each Defendant, however, are not altogether clear as the parties not only cross-reference arguments made toward other counts within their own motions,[5] but also adopt

---

[5]  For example, Ferretti states in its argument in support of summary judgment on the FDUTPA claim, "Moreover, FGUSA addresses below why the Magnuson-Moss Warranty Act does not apply — some of that argument and reasoning may serve as further support and rationale for the inapplicability of FDUTPA," but Ferretti fails to include any discussion as to *which* argument or reasoning it refers to, nor how that argument or reasoning ought to apply to Plaintiff's FDUTPA claim.  (Ferretti's Mot. 3).

Co-Defendants' arguments.[6]  After untangling the web of arguments, the Court addresses them in the following manner: proceeding first with an analysis of Dometic's primary argument as to all claims against it, and then discussing arguments raised by multiple Defendants on each issue.

### A.  Whether It Is Undisputed that Dometic Did Not Manufacture the Vessel's Air Conditioner

Dometic asserts that because the evidence does not show it manufactured the air conditioning unit nor issued any express warranty, it is entitled to summary judgment on all claims against it (Counts XIV through XVIII).  (*See* Dometic's Mot. 1).  A review of the Parties' Statement of Facts reveals that it remains a disputed issue of material fact whether Dometic played a role in manufacturing the air conditioner.  In particular, among other evidence identified by Plaintiff, an email from Dometic's corporate representative, Frank Marciano, names the manufacturer of the air conditioning unit on board the Vessel: "Built by Dometic.  Condaria was an acquisition we did 10 years ago."  (Exhibit F [ECF No. 256-3]; Pl.'s. SMF ¶ 26)[7]; *see also* Defs.' SMF ¶ 24 (referring to Mr. Marciano as Dometic's corporate representative)).  Dometic urges the Court to discount this email in light of other available evidence showing that Dometic was not involved in building the Vessel's air conditioning unit.[8]  (*See* Dometic's Reply 2

---

[6]  Several cross-references are unnecessarily convoluted.  For example, Dometic adopts Ferretti's argument relating to the FDUTPA claim (*see* Dometic's Mot. 9), yet Ferretti's argument is composed of (1) an adoption of Pershing's arguments, and (2) an additional argument relating to the MMWA that it fails to elaborate.  (*See* Ferretti's Mot. 3; *supra* note 5).  The Court sees no reason why Dometic could not have instead incorporated Pershing's arguments.

[7]  Defendants dispute statements contained in Plaintiff's paragraph 26 in part by stating: "Barnext also disingenuously fails to differentiate between defendant Dometic Corporation and non-party Dometic, AB."  (Defs.' Resp. SMF ¶ 26).  This response does not explain why Plaintiff's representation of the content of Mr. Marciano's email is inaccurate.

[8]  Dometic also asserts that the evidence identified by Barnext raises issues concerning piercing the corporate veil, "which is not applicable here."  (Defs.' Resp. SMF ¶ 50).  It is inappropriate to raise legal argument in a statement of material fact.  *See, e.g., Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) ("[A] movant's 56.1(a) statement should contain *only* factual allegations. It is inappropriate to allege legal conclusions in a 56.1(a) statement . . . .") (emphasis in original); *Blackhawk Molding Co., Inc.*

("[Barnext's] reliance upon a single email of Frank Marciano . . . is weak . . . .")).

It is the province of the jury, not the Court, to weigh evidence.  Similarly, it is for the trier of fact to determine whether the nature of Dometic's relationship with Condaria — given evidence demonstrating the companies are interrelated (*see infra* 14 (facts cited therein)) — permits Barnext to recover against Dometic on the air conditioner's warranty.  Accordingly, Dometic's motion for summary judgment based on its assertion that it did not manufacture the air conditioning unit is denied.

## B.  Tort Claims: Negligence and Products Liability

Defendants Pershing, Ferretti, and Condaria argue that the economic loss rule bars recovery based on these tort claims as to damage to both the Vessel (and additional features contained in the Agreement) and other damaged property because (1) the recovery for damage to the Vessel has already been precluded by the Court, and (2) the record evidence demonstrates that damage to "other property" is *de minimis* and therefore relief is also foreclosed by the economic loss rule.  (*See* Pershing's Mot. 3–6; Condaria's Mot. 2 (adopting Pershing's argument); Ferretti's Mot. 2 (same); Order dated May 16, 2011, at 8–9 [ECF No. 109] (limiting Plaintiff's tort claims to damage concerning "other property" and declining to declare *de minimis* the damage to that "other property")).  Barnext argues that post-sale failure-to-warn negligence claims seeking recovery for damage to the Yacht remain viable, and that the damage to its "other property" is not *de minimis*.  (Resp. Pershing's Mot. 2–6 [ECF No. 253]).

### 1.  Economic Loss Rule

The Court has already addressed whether as a matter of law Plaintiff's tort claims — including post-sale failure-to-warn claims — are limited to recovery for damage to "other

---

*v. Portola Packaging, Inc.*, 422 F. Supp. 2d 948, 959 n.7 (N.D. Ill. 2006) (citing *id.*).  As Dometic does not address "corporate veil" issues in its brief, the Court declines to discuss them further.

property" due to the economic loss rule. (*See* Order dated May 16, 2011, at 8–9). Indeed, the Court specifically cited to *Turbomeca, S.A. v. Era Helicopters LLC*, 536 F.3d 351, 371 (5th Cir. 2008), noting that the Fifth Circuit "declin[ed] to adopt 'an exception to the *East River* doctrine for *post-sale* negligent failure to warn claims.'" *Id.* (emphasis added); (*see* Order dated May 16, 2011, at 8). Thus, Plaintiff's contention that the Court's prior Order does not limit a post-sale failure-to-warn claim is incorrect.

Further, Plaintiff cites to a lone case, *Sbarbaro v. Yacht Sales International, Inc.*, No. 94-1062-CIV-MARCUS, 1995 U.S. Dist. LEXIS 22437 (S.D. Fla. Oct. 10, 1995), in support of its position that its post-sale failure-to-warn claims are not limited by the economic loss rule explained in *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986). The *Sbarbaro* court relied on a pre-*East River* case, *Miller Industries v. Caterpillar Tractor Co.*, 733 F.2d 813 (11th Cir. 1984), and the analysis of *Miller* in *McConnell v. Caterpillar Tractor Co.*, 646 F. Supp. 1520, 1526 (D.N.J. 1986) (finding that *Miller* remained persuasive post-*East-River* and holding that negligent failure to warn claims were not barred by the economic loss rule). *See Sbarbaro*, 1995 U.S. Dist. LEXIS 22437, at *28. However, the Third Circuit subsequently expressly rejected *McConnell*'s finding that *Miller* continued to apply. *See Sea-Land Serv., Inc. v. Gen. Elec. Co.*, 134 F.3d 149, 156 (3rd Cir. 1998); *see also Turbomeca*, 536 F.3d at 357 (quoting *Sea-Land*, 134 F.3d at 155–56); (Order dated May 16, 2011, at 9 n.7 (explaining why *East River* implicitly overrules *Miller*)). Thus, Barnext's reliance on *Sbarbaro* is misplaced.

For these reasons, the Court is unpersauded by Plaintiff's contentions, and to the extent it is necessary for the Court to reiterate its rulings, summary judgment in favor of Defendants is appropriate on this issue.

### 2.   Whether "Other Property" is *De Minimis*

Whether the damage to Plaintiff's "other property" is *de minimis* is a disputed issue of fact to be decided upon by a jury.  Evidence shows that damage to "other property" is estimated by Plaintiff to be $14,230.[9]  (Defs.' SMF ¶ 15).  Defendants argue that this figure actually encompasses items that are not "other property" and therefore should be discounted to approximately $3,000.  Even if Plaintiff's "other property" damage amounts to $3,000, whether this amount is *de minimis* is not for the Court to decide.  Although *Delmarva Power & Light v. Meter-Treater Inc.*, 218 F. Supp. 2d 564, 571 (D. Del. 2002), found as a matter of Delaware law that "other property" damage amounting to $171.36 was *de minimis* because the "figure is less than $200 and is significantly less than one tenth of one percent of Delmarva's requested compensation of $5.4 million," that case is not binding, and Defendants present no other authority.  Further, even if the Court were persuaded by *Delmarva*'s reasoning that certain circumstances permit a court to determine the *de minimis* nature of damages as a matter of law, both the ratio and the absolute value of Plaintiff's "other property" are significantly higher than those in *Delmarva*, even considering the lower figure suggested by Defendants.  For example, $3,000 is over seventeen times greater than the value of the "other property" in *Delmarva*.  In any event, persuasive or not, *Delmarva* does not compel the Court to find as a matter of law that damage to Plaintiff's "other property" is *de minimis*.  Accordingly, summary judgment is not appropriate on this issue.

---

[9]   Barnext contends that this figure does not represent a "complete assessment of 'other property' damage." (Plf.'s SMF ¶ 15; Resp. Pershing's Mot. 4–5).  However, at this stage of the litigation, Barnext must identify evidence that the $14,230 figure is incorrect, not simply note that the figure *may* not be $14,230.  *See Fitzpatrick*, 2 F.3d at 1116 ("For issues on which the non-movant would bear the burden of proof at trial . . . the non-movant must respond [to the movant's evidence] with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated.").

### C.  Florida Deceptive and Unfair Trade Practices Act (FDUTPA)

The Defendants argue that Barnext's FDUTPA claims fail because 1) the FDUTPA does not apply to the subject transaction, 2) Barnext lacks standing to raise a FDUTPA claim, 3) there is no evidence of an unfair or deceptive act, 4) Barnext lacks privity with each Defendant, and 5) Barnext cannot recover consequential damages under the FDUTPA.[10]  (*See* Pershing's Mot. 7–16; Condaria's Mot. 2–3 (adopting Pershing's argument); Ferretti's Mot. 3 (same); Dometic's Mot. 8–9 (setting forth its own separate argument that it did not manufacture the air conditioning unit, but adopting Pershing's arguments in the alternative)).  For the following reasons, the Court finds that summary judgment in favor of Defendants is not appropriate on Barnext's FDUTPA claims.

### 1.  Whether the FDUTPA Does Not Apply to the Subject Transaction Because Certain Events Related to the Sale Occurred in the Bahamas

The Court has already explained that Barnext, a foreign corporation, may bring FDUTPA claims against Defendants, which include a domestic corporation and foreign entities, based on Barnext's allegations that the Vessel was sold in Florida.  (*See* Order dated May 16, 2011, at 29–31).  The undisputed facts now show, however, that certain documents relevant to the sale of the Yacht were signed in the Bahamas and that the Yacht was physically transferred to Barnext in the Bahamas.  According to Defendants, these facts demonstrate the sale occurred in the Bahamas, not Florida, thereby rendering the FDUTPA inapplicable to Defendants.

"[T]here are no geographical or residential restrictions contained in the express language of section 501.202 [of the FDUPTA]."  *Millennium Commc'ns & Fulfillment, Inc. v. Office of*

---

[10]  Defendants also assert federal maritime law preempts attorney's fees under the FDUTPA and the Magnuson-Moss Warranty Act.  (*See* Pershing's Mot. 15–16 (setting forth its own argument why attorney's fees are unwarranted and adopting Condaria's choice of law arguments concerning the application of federal maritime jurisdiction).  Because the recovery of attorney's fees does not implicate the viability of Plaintiff's core FDUTPA and MMWA claims, the Court addresses this issue separately. *See infra* Part III.F; *infra* note 20.

*Attorney Gen., Dep't of Legal Affairs, State of Fla.*, 761 So. 2d 1256, 1262 (Fla. 3d DCA 2000).

Indeed, the Act is intended "[t]o protect the consuming public and legitimate enterprises from

those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts

or practices in the conduct of *any trade or commerce*," FLA. STAT. § 501.202 (emphasis added);

and "trade or commerce" is defined as "the advertising, soliciting, providing, offering, or

distributing, whether by sale . . . or otherwise, of any good . . . *wherever situated.*" *Id.* § 501.203

(emphasis added).   Thus, nothing on the face of the statute precludes its applicability to

Defendants simply because evidence shows events relevant to the sale of the Yacht occurred in

the Bahamas.   (*See* Order dated May 16, 2012, at 29–31 (discussing the FDUTPA's scope);

Order dated June 22, 2012, at 17–18 (same) [ECF No. 144]).

Nonetheless, Defendants assert that the FDUTPA applies only to the limited

circumstance where the consumer is located in Florida and the errant conduct at issue occurs

entirely within Florida.   (*See* Pershing's Mot. 8 (suggesting Barnext lacks "standing" to sue

under the FDUTPA because the Act "does not apply to non-Florida consumers undertaking out-

of-state transactions"); *id.* 8–9 (arguing the FDUTPA provides relief only to "Florida

consumers" as opposed to out-of-state consumers and citing, e.g., *Coastal Physician Services of

Broward County, Inc. v. Ortiz*, 764 So. 2d 7 (Fla. 4th DCA 1999)); *id.* 9 (asserting non-resident

consumers can lodge FDUTPA claims only when the conduct at issue occurs entirely within

Florida)).

The Court is unpersuaded that the FDUTPA provides relief only to Florida consumers.

Indeed, *Millennium*, which Defendants cite in support, found that relief under the FDUTPA

could be sought on behalf of consumers located outside of Florida.   *See Millennium*, 761 So. 2d

at 1261–62 ("With due respect to our sister court, we are not persuaded by th[e] holding [in

*Ortiz*, 764 So. 2d 7, that the FDUTPA protects only Florida residents] . . . because as we have earlier noted, there are no geographical or residential restrictions contained in the express language of section 501.202.”); *see id.* at 1262 (adding that the Fourth District Court of Appeal appeared to “recede[], *sub silentio*, from its earlier holding in *Ortiz*” (referring to *Renaissance Cruises, Inc. v. Glassman*, 738 So.2d 436 (Fla. 4th DCA 1999))).

Further, the Court finds nothing in *Millennium* suggests that the FDUTPA applies *only* when conduct occurs entirely within Florida.  To the contrary, *Millennium* highlighted the broad statutory language used in the FDUTPA.  *Millennium*, 761 So. 2d at 1262.  Additionally, in support of its conclusion that “persons affected by the conduct resid[ing] outside of the state” may take corrective measures under the FDUTPA, the court cited to cases discussing the application of other states’ consumer protection laws.  *Id.* at 1262 & n.5.  One such case is *Perry v. Household Retail Services, Inc.*, 953 F. Supp. 1370 (M.D. Ala. 1996), which held that the Illinois Consumer Fraud Act could apply to a transaction that occurred entirely within the state of Alabama and where consumers resided outside of Illinois.  *See id.* at 1376.  Given the *Millennium* court’s reliance on the rationale of *Perry* to support its holding, coupled with the plain language of the FDUTPA, the Court finds Defendants’ argument unavailing.  The FDUTPA is to be applied broadly and is not limited in the manner espoused by Defendants.

Given the FDUTPA’s broad, plain language, whether the FDUTPA applies to Defendants requires an inquiry into the Court’s personal jurisdiction over them.  *See, e.g.*, *Execu-Tech Bus. Sys. Inc. v. New Oji*, 752 So. 2d 582 (Fla. 2000) (requiring that both the Florida long arm statute and the “minimum contacts test” be satisfied for there to be personal jurisdiction over defendants that would subject them to the FDUTPA).  However, while Defendants cite to case law concerning personal jurisdiction (*see* Pershing’s Mot. 9 (citing *Amar Shakti Enters., LLC v.*

*Wyndham Worldwide, Inc.*, Case No. 6:10-cv-1857-Orl-31KRS, 2011 U.S. Dist. LEXIS 93676, at *9 (M.D. Fla. Aug. 22, 2011)), they fail to explain why, if at all, personal jurisdiction is lacking over them such that the FDUTPA does not apply. [11]   In any event, the time for Defendants to raise this argument has passed.  *See Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F. 3d 1210, 1218 n.21 (11th Cir. 2009) ("[A] party's right to dispute personal jurisdiction is waived if the party fails to assert that objection in its first Rule 12 motion, other responsive pleading or general appearance." (citing FED. R. CIV. P. 12(h))).

For the foregoing reasons, summary judgment is denied on this ground.

### 2.  Whether Barnext Has Standing to Sue under the FDUTPA

To the extent that Defendants assert a standing argument separate from their contention that the FDUTPA does not apply to them, *see supra* Part III.C.1, the Court addresses that here. "Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Swann v. Sec'y*, 668 F.3d 1285, 1288 (11th Cir. 2012) (quoting *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) (alterations and internal quotation marks omitted)).  "The Supreme Court has explained that the 'irreducible constitutional minimum' of standing under Article III consists of three elements: an actual or imminent injury, causation, and redressability." *Id.* (quoting *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1265 (11th Cir. 2011)).  Plaintiff clearly has standing in this matter — it suffered losses due to the Vessel fire; that fire is alleged to have been caused by Defendants' actions; and the injury is redressable by a favorable decision on the FDUTPA claims.  Nothing in Defendants' Motions suggests that these elements are not satisfied.

---

[11]  Condaria appears to attempt to set forth facts relating to personal jurisdiction: "[A]s described in detail throughout co-defendants' motions, there was no consumer transaction within the meaning of the Florida Act relating to Condaria and its sale of the system in Italy to Pershing." (Condaria's Mot. 3).  However, Condaria fails to elaborate further.

The "'fundamental aspect of standing' is that it focuses primarily on the party seeking to get his complaint before the federal court rather than 'on the issues he wishes to have adjudicated.'" *Allen v. Wright*, 468 U.S. 737, 791 (1984) (quoting *United States v. Richardson*, 418 U.S. 166, 174 (1974)). "[T]he possibility that the relief might be inappropriate does not lessen the plaintiff's stake in obtaining that relief." *Id.* Here, Defendants' discussion focuses on the applicability of the FDUTPA, which is not directed at the issue of Barnext's Article III standing in this matter. Summary judgment on this issue is inappropriate.

### 3. Whether There Is Evidence of An Unfair or Deceptive Act

It appears that the Defendants' unfair or deceptive acts at issue relate to Defendants' involvement in placing an air conditioner with components, known to ignite fires, into the stream of commerce, ultimately introduced to Barnext in Florida and harming it in Florida. Thus, the Court must engage in a defendant-specific inquiry to determine whether there is evidence of an unfair or deceptive act by a particular Defendant; namely, whether evidence exists to show each Defendant, prior to Barnext's purchase, was aware air conditioners similar to the one aboard the Vessel were defective.

Barnext has identified evidence showing that in 2007, prior to Barnext's purchase of the Yacht, Ferretti, Condaria, and Dometic were notified of a fire aboard a Ferretti-branded[12] vessel named the *Mrs. Jungle*. Specifically, Mr. King, the owner of the *Mrs. Jungle*, testified that the Condaria air conditioner control box aboard the boat was on fire during the incident (*see* Plf.'s SMF ¶ 36), and Mrs. King testified that she informed Ferretti and Condaria of the fire directly, as

---

[12] It is unclear whether Ferretti is a yacht and components manufacturer. (*Compare* Plf.'s SMF ¶ 28 ("Undisputed that Ferretti is a yacht or components manufacturer.") *and* Defs.' Resp. SMF ¶ 28 (does not specifically dispute), *with* Defs.' SMF ¶ 28 ("Ferretti Group USA does not build any boats or any component parts for boats."). Nonetheless, the parties agree that the *Mrs. Jungle* is a "73' Ferretti." (*See* Plf.'s SMF ¶ 36; Defs.' Resp. SMF ¶ 36 (does not specifically dispute that the *Mrs. Jungle* is a "73' Ferretti")).

well as a repair facility that relayed information of the fire to Ferretti and Condaria.  (*See id.* ¶ 39; Comp. Ex. J, at 3 (repair facility's notes indicating repair facility sent an e-mail with photos to "Feretti [sic] Group USA, Joe Cusmano and Arnie" (capitalizations omitted)) [ECF No. 250-12]).  Although the Kings did not state that they also contacted Dometic, Barnext has identified a disputed issue of fact as to whether the operations of Condaria and Dometic are sufficiently intertwined such that Dometic would have likewise been informed of the *Mrs. Jungle* fire.  (*See, e.g.*, Plf.'s SMF ¶ 49 (stating Mr. Marciano, Dometic's corporate representative, sent an e-mail indicating that Dometic acquired Condaria "10 years ago"); *id.* ¶ 50 (noting Dometic and Condaria's insignias were both found on the Vessel's air conditioning system and certain documents); *id.* ¶ 54 (stating Mr. Marciano attended a meeting to discuss a repair agreement on behalf of Condaria).[13]  Additionally, there exists evidence to support that Pershing was also aware of the *Mrs. Jungle* fire in 2007.  (*See* Pershing Dep. 255:2–259:16 (Comp. Ex. A Vol. I, at 21–22) (recalling being informed by Brian Kelley of Ferretti about the *Mrs. Jungle* fire) [ECF No. 250-1]).  While Defendants identify evidence to the contrary indicating they were unaware of the *Mrs. Jungle* fire until the instant litigation (*see* Defs.' Resp. SMF ¶ 39), it is clear that when Defendants were informed of the fire remains an issue to be decided by the finder of fact.

Defendants also assert that Barnext has failed to demonstrate that examples of fires

---

[13]  Barnext also relies on a 2008 fire aboard a boat named the *Blanchard* to demonstrate Defendants were aware the air conditioning unit aboard the Vessel could cause a fire.  (*See* Plf.'s SMF ¶ 37; *see also* Resp. Pershing's Mot. 14–15).  But Barnext fails to explain why the fire, which did not involve an air conditioning system built by either Condaria or Dometic (*see* Defs.' SMF ¶ 37), is relevant to its FDUTPA claim.  Although the fire occurred in April 2008 (*see* Giovanetti Dep. 32:5–6 (Comp. Ex. A Vol. II, at 10) [ECF No. 250-2]), Barnext points to no evidence showing that Defendants were aware of that fire prior to Barnext taking possession of the Vessel on September 29, 2008.  (*See, e.g., id.* 32:3–4 (Dometic employee, Matteo Giovanetti, first learned of the *Blanchard* fire in November 2009); Comp. Ex. L, at 24 (e-mail dated August 30, 2010 from Giovanetti to Joe Cusmano of Condaria stating, "Remember the Grand Banks [*Blanchard*] case Charlie and I involved you in many months ago . . . ?") [ECF No. 256-4]).  Thus, Barnext fails to explain how knowledge of the *Blanchard* fire shows what Defendants knew prior to Barnext's purchase of the Vessel.  In any event, Barnext does not identify how Pershing or Ferretti was aware of this fire.

aboard other boats, such as the *Mrs. Jungle*, are similar to the Vessel's fire, and therefore fails to show that Defendants violated the FDUTPA.  (*See* Pershing's Mot. 8–9).  However, Barnext asserts that a type-P0 capacitor failed in the Condaria/Dometic air conditioning unit installed aboard the Vessel, and there is evidence that the fire aboard the *Mrs. Jungle* was also caused by a failed P0 capacitor in a Condaria unit.  (*See* Paul King Dep. 18:17–19 (Comp. Ex A Vol. III, at 9) (confirming that "Rich from Beard Marine," the repair facility, told him that the capacitors caused the fire) [ECF No. 250-3]; *see also* Pl.'s SMF ¶ 36 n.56 (citing evidence in the record indicating that the *Mrs. Jungle* would have originally carried type-P0 capacitors and owners prior to the Kings did not change the capacitors)).  While certain evidence shows it is unclear whether the Kings changed the capacitors prior to the fire (*see* Defs.' Resp. SMF ¶ 36), that simply means this question remains for the jury to decide.[14]

Condaria separately argues that although it shipped the subject air conditioning unit to Pershing in June or July 2007 (*see* Condaria's Mot. 3 (citing Defs.' SMF ¶ 19); *see also* Pl.'s SMF ¶ 19), there is no evidence that it "knowingly distributed the product with a known defect" because the evidence does not show Condaria knew of the alleged defect prior to that sale date.  (Condaria's Reply 4).  Although Condaria's argument appears persuasive, Condaria provides no legal analysis with respect to whether its failure to withdraw the defective air conditioning unit from the market after its initial sale to Pershing, but prior to the sale to Barnext, constitutes an "unfair practice."  *See, e.g.*, *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001) (observing that "[a]n unfair practice under the federal statute [which bears

---

[14]  According to Condaria, "[t]here is no evidence that Condaria had any knowledge that the finished Pershing would ultimately be sold to Barnext Offshore in the Bahamas and [and that it would eventually be] use[d] in Florida."  (Condaria's Mot. 3) (alterations added).  Condaria fails to elaborate, however, why this fact is fatal to Barnext's FDUTPA claims, when evidence shows Condaria was aware that the air conditioning units it manufactured containing type-P0 capacitors — wherever distributed and installed — had a latent defect.

on an interpretation of the FDUTPA] has been defined as one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers'" (quoting *Spiegel, Inc. v. Fed. Trade Comm'n*, 540 F.2d 287, 293 (7th Cir. 1976))). Namely, Condaria fails to explain why the date of Condaria's sale to Pershing is the date prior to which Barnext must show Condaria was aware of any defect in the unit, when evidence shows, for example, Condaria knew Pershing would not be the end-user of the air conditioner; and (2) it contemplated a relationship with end-users, such as Barnext, evident by the ability of end-users to file claims under the Condaria warranty.  In sum, it is not entirely clear that Condaria's assertion is correct because Condaria fails to engage in any meaningful discussion.  Notably, Condaria relies on the legal arguments and discussion provided by its Co-Defendants, none of which address this issue.

Moreover, Barnext responds with evidence showing Condaria knew of the defect prior to the sale of the air conditioning unit to Pershing.  (*See* Resp. Condaria's Mot. 7).  Specifically, it notes that an "exothermic . . . event[]" was caused by a capacitor failure in 2004.  (*Id.* 8). Barnext points to an expert report (*see* Pl.'s SMF ¶ 35 n.52 (referring to Edmonds Rep. (Ex. H) [ECF No. 250-10])), which notes that Joseph Cusmano, Senior Manager for Condaria, "confirmed that the Condaria A/C system design has used P0-type . . . capacitors for at least as long as his tenure with Condaria," and that a known capacitor failure occurred on July 9, 2004. (Edmonds Rep. 20; *see* Condaria Dep. 15:24–16:16 (Comp. Ex. A Vol. I, at 26–27) (indicating Mr. Cusmano was with Condaria since 2001 [ECF No. 250-1])).  As the issue raised by Barnext is the failure of type-P0 capacitors, and as there is evidence that Condaria was aware of such failures approximately three years prior to its sale of the unit to Pershing, a genuine issue of material fact remains concerning the timing of Condaria's knowledge.

For the foregoing reasons, summary judgment on this issue is denied.

### 4.   Whether There Is Privity Between Plaintiff and Each Defendant

Defendants argue that Plaintiff's lack of privity with Defendants Pershing, Ferretti, Condaria, and Dometic is fatal to the FDUTPA claims against them.   (*See* Pershing's Mot. 13; Condaria's Mot. 2–3 (adopting Co-Defendants' arguments that "there was no consumer transaction within the meaning of the Florida Act relating to Condaria and its sale of the system in Italy to Pershing");[15] Ferretti's Mot. 3 (adopting Pershing's argument);[16] Dometic's Mot. 8–9 (asserting that there is no evidence of a consumer transaction between Plaintiff and Dometic, as required by the FDUTPA, and adopting Ferretti's argument "in an abundance of caution")). Defendants do not identify any statutory language in the FDUTPA that requires privity, but point to a singular case, *Virgilio v. Ryland Grp., Inc.*, No. 6:08-cv-815-Orl-31GJK, 2009 WL 320857, at *1, *6 (M.D. Fla. Feb. 9, 2009), as support for that legal proposition.   (*See* Pershing's Mot. 13).

Defendants' reliance on *Virgilio* is misplaced.   *Virgilio* concerned the sale of residential property built upon a former World War II-era bombing site, where the plaintiff-homebuyers brought claims against the seller as well as various developers.   *See id.* at *1.   In dismissing the plaintiffs' FDUTPA claims against the developers, the court held that the plaintiffs failed to allege the developers engaged in any deceptive or unfair trade practice because they conceded that the developers did not sell them their homes, and therefore, no duty to disclose arose.   *See*

---

[15]   Portions of Condaria's Motion are so vague that the Court has also construed this statement as asserting an argument concerning personal jurisdiction.   *See supra* note 11.   Indeed, Condaria fails to state which argument of its Co-Defendants it is adopting.

[16]   Ferretti also asserts that "some of [its] argument and reasoning [addressing Plaintiff's claims under the Magnuson-Moss Warranty Act] may serve as further support and rationale for the inapplicability of FDUTPA."   While they may, Ferretti does not indicate which MMWA arguments apply, nor how the Court should apply them in a FDUTPA context, and the Court will not make Ferretti's arguments for it.

*id.* at *6.  In arriving at its decision, the court specifically referenced a previous section of its order stating that "some indicia of privity or a fiduciary, contractual, or other special relationship" between a former home seller and the current buyer is necessary "before the duty to disclose can be imposed on a former seller."  *Id.* at *5 (discussing *Johnson v. Davis*, 480 So. 2d 625 (Fla. 1985)) (citation omitted); *see id.* at *4 (concluding "the duty to disclose articulated in *Johnson* does not extend to the [developers]"); *id.* at *6 (finding the plaintiffs failed to allege that developers engaged in any deceptive or unfair trade practice because developers "were under no obligation to reveal material defects" to the plaintiffs).

Defendants fail to inform why the holding of *Virgilio*, requiring privity before the imposition of *Johnson*'s duty to disclose, extends to all types of sales or all types of duties owed between parties.  Indeed, *Johnson*'s holding was tailored to real property transactions: "[W]e hold that where the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer.  This duty is equally applicable to all forms of real property, new and used."  *Johnson*, 480 So. 2d at 629.  The Court finds no indication in *Virgilio* that privity is required for a FDUTPA claim that does not concern the sale of real property and is not premised on the duties outlined in *Johnson*.  Without more, Defendants have not met their burden of demonstrating to the Court that summary judgment on the FDUTPA claim is appropriate on this ground.

### 5.  Whether Recovery under the FDUTPA Is Limited to Actual Damages

Barnext asserts that it will not seek to recover beyond actual damages pursuant to the FDUTPA.  There is no disputed issue of law or law for the Court to address, and therefore Defendants' request is denied as moot.

### D.   Warranty Claims

#### 1.   Breach of Express Warranty

Barnext raises breach of express warranty claims against Ferretti, Condaria, and Dometic (Counts VI and XVI).  Dometic's sole basis for seeking summary judgment is that it did not manufacture the air conditioning unit and is therefore not responsible for any warranty claims. (*See* Dometic's Mot. 6–7).  This argument has already been rejected, as it remains a disputed issue of fact whether Dometic built the air conditioning unit that was installed on the Vessel.  *See supra* Part III.A.

Ferretti and Condaria assert that the terms of the warranties bar Barnext's claims because the claims do not fall within the scope of the warranties for various reasons such as time limitations, circumscription of the subject matter of the warranties (e.g., Ferretti asserts that its warranty does not cover the air conditioning unit), and Barnext's failure to either submit a claim or permit Defendants to cure any alleged breach.  (*See* Condaria's Mot. 5–6; Ferretti's Mot. 9–13).  Barnext counters that summary judgment on its warranty claims based on the prescribed limitations in the warranties is not proper because at issue is whether the express warranties are unconscionable or failed their essential purposes — which hinge on whether Ferretti and Condaria knew of the defect in the air conditioning unit prior to the sale of the Vessel to Barnext, and whether the defect was latent and not discoverable on reasonable inspection.  (*See* Resp. Ferretti's Mot. 6–11 [ECF No. 252]; Resp. Condaria's Mot. 7–11 [ECF No. 254]).

"[W]hen defects in the goods are latent and not discoverable on reasonable inspection," a warranty also fails in its essential purpose."  *Marr Enters., Inc. v. Lewis Refrigeration Co.*, 556 F.2d 951, 955 (9th Cir. 1977); *Cox v. Lewiston Grain Growers, Inc.*, 936 P.2d 1191, 1198 (Wash. Ct. App. 1997); (*see also* Order dated Mar. 16, 2011, at 20).  Similarly, if a product

contains a known latent defect then any warranty limits may be unconscionable. *See Lennar Homes, Inc. v. Masonite Corp.*, 32 F. Supp. 2d 396, 401 (E.D. La. 1998); (Order dated May 16, 2012, at 21). Ferretti readily agrees that as to Plaintiff's claim that the warranties are unconscionable, "Plaintiff must, at the summary judgment stage, adduce evidence that Defendant[s] . . . knew, at the time of the sale, that the yacht was defective." (Ferretti's Mot. 13).

As stated in the discussion of Barnext's FDUTPA claims, Plaintiff has identified such evidence, and thus whether Ferretti or Condaria knew of the alleged defect remains a question of fact for the jury to decide. *See supra* Part III.C.3. Additionally, whether the air conditioning unit contains a latent defect appears to remain disputed, as Defendants do not assert otherwise. (*See generally* Condaria's Mot. (containing no argument about the nature of the alleged defect); Ferretti's Mot. (same)). Further, any additional arguments made by Ferretti ignore these identified disputed issues of fact. (*See, e.g.*, Ferretti's Mot. 13 (stating that Ferretti "did not know that the yacht was defective at the time the warranty was issued and/or it was sold to Plaintiff" . . . "as discussed below," but failing to indicate the location of such discussion, nor could the Court find it upon inspection of the remainder of the Motion)).

For these reasons, summary judgment on Barnext's breach of warranty claims is denied.

### 2. Breach of Implied Warranties against Ferretti[17]

#### i. Breach of Implied Warranty of Merchantability

Ferretti asserts Plaintiff's breach of implied warranty claims are time-barred by the plain terms of its express warranty. (*See* Ferretti's Mot. 14). In particular, Ferretti asserts that the express warranty "lawfully disclaims all implied warranties and it limits the duration of implied

---

[17] The Court does not address Ferretti's argument that Barnext's claims for breach of implied warranties fail for lack of privity because it was not raised in the Motion (or if it was, it was not conspicuous), only in the Reply. (*See generally* Ferretti's Mot.; Ferretti's Reply 10).

warranties (to the extent they cannot be disclaimed at law) to one-year." (*Id.*).  As the Court has explained in Parts III.C.3 and III.D.1, it remains a disputed issue of fact whether the air conditioning unit contains a latent defect, and whether Ferretti knew the air conditioning unit was defective when the Vessel was sold to Barnext.  These disputed issues of material fact speak to whether the express warranty is unconscionable or failed in its essential purposes.  As there is no basis for the Court to conclude as a matter of law the veritable applicability of the express warranty's terms, summary judgment is denied.

### ii.  Breach of Implied Warranty of Fitness for a Particular Purpose

As to Barnext's breach of implied warranty of fitness for a particular purpose claim against Ferretti (Count VIII), Ferretti reiterates its previous argument already discussed and rejected by the Court in Part III.D.2.i.  Namely, it states that "any implied warranties had already expired at the time of the fire because the [Ferretti] limited warranty limits the duration of all implied warranties to the same one-year period as its express limited warranty." (Ferretti's Mot. 14).  For reasons already explained, the Court rejects that argument here.  However, Ferretti raises one additional argument not previously addressed by the Court: Barnext "never alleged a specific or particular purpose for which it bought the yacht beyond the ordinary purpose of taking the yacht out on the water to enjoy with friends and family." (*Id.*).

"A warranty of fitness for a particular purpose arises when the buyer relies on the seller's skill or judgment to select the goods and the seller at the time of contracting has reason to know the buyer's purpose and that the buyer is relying on the seller's skill and judgment." *First New Eng. Fin. Corp. v. Woffard*, 421 So. 2d 590, 596 (Fla. 5th DCA 1982) (citing FLA. STAT. § 672.315).  To maintain an action for breach of implied warranty of fitness for a particular purpose, "[a] plaintiff must prove that the defendant, at the time the sale was made, knew of a

particular purpose for which the goods were going to be used and that the plaintiff relied upon the defendant's skill and judgment when purchasing said product." *Crawford v. Gold Kist, Inc.*, 614 F. Supp. 682, 687 (M.D. Fla. 1985) (citing *Fletcher Co. v. Melroe Mfg. Co.*, 238 So. 2d 142 (Fla. 1st DCA 1970)). The Eleventh Circuit has described a particular purpose as differing "'from an ordinary purpose in that it envisages a specific use by the buyer which is peculiar to the nature of his business.'" *Czarnecki v. Roller*, 726 F. Supp. 832, 843 (S.D. Fla. 1989) (quoting *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1100 (11th Cir. 1983)). As the Court previously noted, "[c]ourts have not applied exacting standards as to what constitutes a 'particular' as opposed to an 'ordinary' purpose. . . . The determination as to what is the ordinary versus particular purpose of a yacht depends on the individualized facts of the case, and courts have come to seemingly inconsistent conclusions." (Order dated May 16, 2011, at 23).

Ferretti asserts that Barnext "has not established any facts that it told [Ferretti], at the time of contracting, of any specific purpose unique to [the Vessel] that goes beyond the ordinary and typical use of a recreational yacht nor did he rely on the seller's skill or judgment." (Ferretti's Mot. 16). Ferretti adds that the only evidence regarding Barnext's purpose for the Vessel appears in Mr. Barnett's deposition (*see* Defs.' SMF ¶ 1), wherein Mr. Barnett indicated that he used the Vessel for "[d]ay trips. Go out for the afternoon and enjoy the weather. Enjoy the water. Anchor, use the jet skis. Go to lunch. . . . Going to Houston's on the boat . . . . [G]o to Ocean Reef. . . . [P]eriodically . . . go to the Bahamas." (Barnett Dep. 23:16–24:2 [ECF No. 233-1]; *see also* Defs.' SMF ¶ 3). According to Ferretti, this testimony is insufficient to demonstrate a particular purpose or that Barnext relied on Ferretti's skill and judgment in light of that purpose.

Barnext responds to Ferretti's argument by re-stating the May 16 Order and faulting Ferretti for failing to point to any evidence showing anything more than facts alleged in the Second Amended Complaint which describe how Barnext used the Vessel. (Resp. Ferretti's Mot. 15). This response is inadequate to satisfy Barnext's burden in withstanding summary judgment. While Ferretti's argument focuses on whether Barnext's use is not "particular," Ferretti also contends that there is no evidence demonstrating Barnext relied on Ferretti's representations pertaining to his "particular" purposes for the Vessel. It is the absence of evidence regarding this latter element that is fatal to Barnext's claim.

When a movant demonstrates an absence of evidence on an issue which the non-movant would bear the burden of proof at trial,

> [T]he non-movant must respond in one of two ways: First, he or she may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence. Second, he or she may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.

*Fitzpatrick*, 2. F.3d at 1116–17 (citing *Celotex*, 477 U.S. at 332 (Brennan, J., dissenting); Melissa L. Nelkin, *One Step Forward, Two Steps Back: Summary Judgment after* Celotex, 40 HASTINGS L.J. 53, 82–83 (1988)). While the Court liberally construed Barnext's Second Amended Complaint and found dismissal of the claim unwarranted at that time, in defending a summary judgment motion Barnext must identify evidence supporting its claim. Barnext fails to do so — it points to no evidence that demonstrates how it relied on the seller's skill and judgment in choosing a particular yacht for its particular purposes.[18] For these reasons, summary judgment is

---

[18] The Court observes that although neither party has brought it to the Court's attention, Mr. Barnett testified that individuals at MarineMax "knew the purpose. They knew me well. . . . Tom and Peter knew how much I used the boat and how much my family enjoyed the boat. It was very obvious what the purpose was." (Barnett Dep. 23:8–12 (Comp. Ex. A Vol. I, at 8) [ECF No. 250-1]). However, Barnext

granted on this issue.

### E.  Magnuson-Moss Warranty Act (MMWA)

The MMWA "'allows consumers to enforce written and implied warranties in federal court, borrowing state law causes of action.'"  *Federico v. Freedomroads RV, Inc.*, No. 09-CV-2027, 2010 WL 4740181, at *5 (N.D. Ill. Nov. 10, 2010) (quoting *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004)).  Ferretti, Condaria, and Dometic give two reasons why Plaintiff's MMWA claims must fail as a matter of law.  (*See* Ferretti's Mot. 17 – 20; Condaria's Mot. 2 – 3 (adopting Ferretti's arguments); Dometic's Mot. 7–8 (same)).  First, they contend that because Plaintiff's warranty claims under state law fail, Plaintiff's MMWA claims must also fail.  Because the Court has already concluded summary judgment is inappropriate on the warranty claims (*see supra* Part III.D), the Court likewise rejects this argument.

Second, Defendants assert that Congress did not intend for the MMWA to apply extraterritorially, and they urge the Court to reconsider its prior ruling which found to the contrary (*see* Order dated May 16, 2011, at 11), in light of *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883 (C.D. Cal. 2011).  As an initial matter, the Court observes that both Condaria (a foreign entity), Dometic (a domestic entity), and Ferretti (a domestic entity) all raise the same argument.  (*See supra* (Condaria and Dometic adopting Ferretti's arguments)).  From this, the Court concludes Defendants' argument rests on a premise other than each entity's domestic or foreign status.  Indeed, Defendants' legal discussion engages only in a statutory construction analysis of the MMWA.[19]  (*See* Ferretti's Mot. 19–20.).

---

offers no explanation how this testimony, or other evidence, either shows what Ferretti's representations were, or supports its assertion that it relied on those representations in choosing the Vessel for its particular purposes.

[19]  Although Defendants list two pages of facts purporting to "establish the foreign aspect and nature of Barnext['s] . . . offshore purchase and continued ownership and use of the [Vessel]" (Ferretti's Mot. 17;

The Court has already undertaken an exhaustive discussion of Congress's intent to apply the MMWA extraterritorially, including a detailed analysis of the legislative history. (*See* Order dated May 16, 2011, at 9–15). Specifically, the Court found that the MMWA applies to exports to foreign countries, which is what the undisputed facts show occurred here: MarineMax, a company operating in Florida, shipped the Vessel to the Bahamas for delivery to Barnext, a British Virgin Islands corporation. *In re Toyota Corp.*'s discussion of the MMWA is sparse — just three sentences long — and, except for two citations to *Morrison v. National Australia Bank, Ltd.*, 103 S. Ct. 2869 (2010), provides little indication why the Court should apply Defendants' statutory construction analysis. *See In re Toyota Corp.*, 785 F. Supp. 2d at 915. Further, Defendants' analysis fails to address any portion of the Court's detailed ruling, and instead draws sweeping statutory construction generalities. For these reasons, Defendants have not persuaded the Court that reversing its decision regarding the MMWA's applicability to this case is warranted.

Condaria appears to also separately argue the MMWA does not apply to it "under the factual circumstances of the matter" (Condaria's Mot. 3), and proceeds to list a number of facts: Condaria sold the air conditioning unit to Pershing, they are both Italian entities, and Condaria had no knowledge that the air-conditioning system would be put on a Pershing-built boat that would ultimately be sold in the United States to a consumer such as Barnext. (*See id.*). Condaria fails to inform, however, how these purported undisputed facts dispose of Barnext's MMWA claims (*see id.* (citing no law and providing no legal analysis)), and therefore has failed to carry its burden on its Motion. *See Fitzpatrick*, 2 F.3d at 1115.

---

*see id.* 17–18), their discussion is devoid of any application of law to those facts. Indeed, while Defendants assert "apply[ing] the MMWA in this case would have the unfair result of allowing Barnext . . . to pick and choose certain aspects of U.S. and Florida law it deems preferable," they fail to explain why Barnext should be prohibited relief because the situation is seemingly "unfair." (*Id.* 18 n.3).

**F. Whether Recovery under the FDUTPA or the MMWA Permits Attorney's Fees**

Defendants Condaria, Pershing, and Ferretti[20] contend that maritime law, instead of
Florida law, applies to this matter and therefore precludes Barnext's recovery of attorney's fees
under the FDUTPA and the MMWA.  Specifically, these Defendants assert "[t]he crux of this
case is breaches of warranties, which at their essence concern an obligation to repair or replace
an already existing vessel."  (Condaria's Mot. 8).  Accordingly, Defendants conclude that their
warranties "amount[] to an agreement to service and repair the [Vessel]," which render the
agreements subject to admiralty law.  (*Id.*); *see Alcoa S.S. Co. v. Charles Ferran & Co.*, 383 F.2d
46, 50 (5th Cir. 1967) ("It is well settled that a contract to repair a vessel is maritime." (citing *N.
Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co.*, 249 U.S. 119 (1919)) (other citations
omitted)).

Even if admiralty law restricts the recovery of attorney's fees[21] when it is in conflict with
the FDUTPA and MMWA,[22] Defendants have failed to show that such a restriction is applicable
here because they do not demonstrate the subject sale or warranties are maritime.  Although they

---

[20]  Although Condaria indicates it raised its argument that general maritime law is applicable "for the
benefit of all Defendants" (Condaria's Mot. 3; *see also id.* 6 (raising "choice of law argument on behalf of
all Defendants")), not all Defendants expressly adopt Condaria's arguments.  (*Compare* Pershing's Mot.
16 (adopting Condaria's argument), *and* Ferretti's Mot. 20 (adopting Pershing's and Condaria's
arguments), *with* Dometic's Mot. (lacking express adoption or incorporation of Condaria's argument nor
raising any similar argument)).

[21]  "'The prevailing party in an admiralty case is not entitled to recover its attorneys' fees as a matter of
course.'"  *Misener Marine Constr., Inc. v. Norfolk Dredging Co.*, 594 F.3d 832, 838 (11th Cir. 2010)
(quoting *Natco Ltd. P'ship v. Moran Towing of Fla., Inc.*, 267 F.3d 1190, 1193 (11th Cir. 2001)).

[22]  Defendants argue that resolution of the conflict over attorney's fees provisions — maritime law
precludes attorney's fees, whereas the FDUTPA and MMWA permit their recovery — should favor
admiralty law.  (*See* Condaria's Mot. 9–10; Pershing's Mot. 15–16).  Defendants also argue that because
of the existence of a choice of law conflict over attorney's fees, "Plaintiff's claims of breach of implied
warranty, revocation and breach of express warranty under the MMWA must be dismissed as a matter of
law . . . ."  (*Id.* 10).  The Court does not reach these issues, as Defendants have failed to demonstrate
maritime law applies to Barnext's FDUTPA and MMWA claims.

discuss at length that Barnext did not purchase a custom-built yacht, but rather purchased a "fully built and finished" Vessel (Condaria's Mot. 7), these facts do not subject the contract for sale to maritime law.  *See Cooper v. Meridian Yachts, Ltd.*, 575 F. 3d 1151, 1166 (11th Cir. 2009) ("[A] contract for the sale . . . of a ship is not within the federal courts' admiralty jurisdiction." (citing *Richard Bertram & Co. v. The Yacht, Wanda*, 447 F.2d 966, 967 (5th Cir. 1971)); *see also Hatteras of Lauderdale, Inc. v. Gemini Lady*, 853 F.2d 848, 850 (11th Cir. 1988) ("[T]he law in the Eleventh Circuit is firmly established that neither contracts for construction nor for sale of a vessel are maritime in nature." (citations omitted)).

Further, Defendants wholly ignore whether the warranties were part of the bargain involving the sale of the Vessel (as opposed to separate contracts for repair) and therefore have failed to demonstrate that the warranties at issue are maritime.  *See Carrier v. Jordaan*, 746 F. Supp. 2d 1341, 1349 (S.D. Ga. 2010) ("Since the warranty claims in this case arise from the sale of the Vessel, the claims are within the diversity jurisdiction of the court and are governed by state, rather than admiralty, law."); *Fed. Ins. Co. v. Lazzara Yachts of N. Am., Inc.*, No. 8:09-CV-607-T-27MAP, 2010 WL 1223126, at *4 (M.D. Fla. Mar. 25, 2010) ("[W]arranty claims grounded in contracts for the construction or sale of a vessel are outside admiralty jurisdiction." (citing *East River*, 476 U.S. at 872 n.7)).

The Court is not persuaded that maritime law governs the sale of the Vessel nor the accompanying warranties.  Therefore, summary judgment precluding Barnext from seeking attorney's fees under the MMWA and FDUTPA on this ground is denied.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** as follows:

Case No. 10-23869-CIV-ALTONAGA/Simonton

1. Pershing's Motion **[ECF No. 234]** is **GRANTED IN PART and DENIED IN PART**.

2. Dometic's Motion **[ECF No. 235]** is **DENIED**.

3. Condaria's Motion **[ECF No. 236]** is **GRANTED IN PART and DENIED IN PART**.

4. Ferretti's Motion **[ECF No. 237]** is **GRANTED IN PART and DENIED IN PART**.

**DONE AND ORDERED** in Chambers, at Miami, Florida, this 2nd day of May, 2012.

_Cecilia M. Altonaga_
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:  counsel of record